Argucd June 5, affirmed December 29, 1972

# NEPOM, *Appellant, v.* DEPARTMENT OF REVENUE, *Respondent.*

504 P2d 1039

*Morris J. Galen,* Portland, argued the cause for appellant. On the briefs were Tonkon, Galen & Baker, Portland.

*Glen V. Sorensen,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Ted E. Barbera, Assistant Attorney General, Salem.

O'CONNELL, C.J.

Plaintiff appeals from a decree of the Oregon Tax Court on the ground that her property was over-assessed for the tax years 1969-1970 and 1970-1971. 4 OTR 531 (1971).

The property in question consists of a parcel of land together with improvements in the form of 44 apartment units and a garage, all of which were constructed between 1923 and 1925. Major repairs were made on the apartments in 1969 and the units were producing rental income at the time of the assessment.

The land is located in an M-2 zone, which designates the area as one for light manufacturing and distribution and it is agreed that the highest and best use of the property is for these purposes. Likewise, it is agreed that the use of the land for apartment purposes is inconsistent with the highest and best use of the property.

The property was assessed at $270,500. Of this total assessment, $200,000 was allocated as the value of the land and $70,500 as the value of the improvements.

In the trial court plaintiff took the position that the "income approach," (the capitalization of rentals) was the most appropriate method of appraising the

property. Using this approach, plaintiff's appraiser accepted defendant's $200,000 assessment of the land but allocated no value to the existing improvements.

The method employed by the assessor was essentially the method described in texts on appraisal as the "building residual technique." The principle of this technique is that where land is not being utilized for its highest and best use the value of an improvement incompatible with the highest and best use of the land is "equal only to the capitalized value of the income it contributes over and above the income the land would produce if developed to its highest and best use."[1]

Defendant's appraiser testified that the income approach was only incidentally applicable and that the market data approach was the appropriate method of appraisal. He pointed out that although the highest and best use of the land was for M-2 purposes, the property was in a transition stage in which the land was not being actually used for its best purposes. He concluded that under these circumstances a prospective purchaser of the property would consider the income

---

[1] Kahn, Case and Schimmel, Real Estate Appraisal and Investment, p. 149 (1963). See also, Ring, The Valuation of Real Estate, pp. 283-298 (1970).

The method can best be explained by the following illustration. Assume a land value of $200,000 and income attributable to the land to be $20,000. Further, assume a net income from the improvement to be $30,000. The residue attributable to the improvement would be the difference between $30,000 and $20,000, or $10,000. Capitalized at 15%, the improvement would have a value of $66,666. The total value of land and the improvement would then be $266,666.

In the example above if the income from the improvement were $20,000, there would be no "building residual" and therefore there would be nothing to capitalize as the value of the improvement.

which the apartments would yield during this period of transition.

■ Although disclaiming the appropriateness of the income approach, defendant's appraiser employed it essentially in the same manner as described above as the building residual approach, but did so by treating the value attributable to the rental income as a factor which a willing buyer would take into account in purchasing transitional property. Whether the method of appraisal is described as the building residual technique or as the market data approach as a factor affecting the market price of the property, we think that the assessed value was correctly determined.

Plaintiff contends that our reasoning in *Portland Golf Club v. State Tax Comm.,* 255 Or 284, 465 P2d 883 (1970) precludes the addition of the value of improvements the use of which is inconsistent with the highest and best use of the land. In the *Portland Golf Club* case the land comprising the golf course was assessed on the basis that its highest and best use was for residential purposes. We held that it was impermissible to add to the value of the land the value of the club house and other improvements. We do not regard our holding in that case as inconsistent with the position we now take.

Unlike the present case, the improvements in *Portland Golf Club v. State Tax Comm., supra,* were not of the type which would produce income for a buyer who purchased the land for its highest and best use, which was for residential purposes in that case.[⑨] To

---

[⑨] Moreover, the income approach is not applicable in the appraisal of country clubs (and the Portland Golf Club would be so classified) because they are not usually operated for profit. Carb and Helbing, *Appraisal of a Country Club* in Encyclopedia of Real Estate Appraising 837 (Friedman ed 1968).

put it differently, there was no evidence in the *Portland Golf Club* case, as there was here, that a purchaser would pay a higher price for the land based upon the value attributable to an income producing improvement.[9]

■ Plaintiff contends that the Tax Court erred in increasing the assessed value of the land after the statutory deadline (ORS 308.280) by shifting to the land assessment roll the assessed value of the improvements. This contention is not supported by the record. The Department of Revenue entered two orders finding that the value of the land was $200,000 and the value of the improvements was $70,500. The Tax Court affirmed the department's orders. These are the same values that are on the assessment roll. The Tax Court held that "the evidence was insufficient to permit the court to make a proper allocation of the value between the land and buildings" and found that "the total true cash value for land and buildings * * * was not less than the $270,500 found by the defendant." *Nepom v. Dept. of Revenue,* 4 OTR at 535-536. Thus the assessment roll remained the same even though the Tax Court did not accept the apportionment and even though defendant's appraiser discussed the appraisal in terms of a combined price for both land and improvements.

The decree of the Tax Court is affirmed.

---

[9] Even if it were assumed that the purchaser would receive income from the golf course improvements, it would still be necessary to show under the building residual technique that the income attributable to the improvements exceeded the income attributable to the land at its highest and best use.